This next case is 4-15-0703, People of the State of Illinois v. Gary Hillis. Appearing for the appellant is Attorney Turpin, is that correct? Yes, Your Honor. All right. And Attorney Watts is also listed as counsel for the appellant, but it's my understanding that you're ready to proceed on Mr. Hillis' behalf. Is that right? Yes, Your Honor. Mr. Watts is en route and I'm not sure when he'll arrive, so I'd be happy to proceed at this time. All right. Appearing for the appellee is Attorney Zimmerman. Mr. Turpin, are you ready to proceed? I am, Your Honor. You may. Thank you. Your Honors, good afternoon. Again, my name is Elliot Turpin. I represent the defendant, Gary Hillis, in this case, and if it pleases the court and counsel, I would like to start out arguing argument number one in our brief, and that is the error in denying the defense motion to present a medical witness to testify as to the injuries involved in this case so as to express an opinion on possible placement of the parties inside the vehicle at the time. As the court knows from having read the record, this is a case which, at least from the state's perspective, was largely circumstantial. There were no direct witnesses who testified that they saw the defendant driving and the state attempted to prove that Mr. Hillis was driving the vehicle on the basis of circumstantial evidence. And that mainly consisted of the opinion of the accident reconstructionist expert, Mr. Shigemura, who did testify as to his opinion based on certain injuries that he was aware of based on his examination of the case. The defense sought to present the testimony of Dr. Earnshaw, who had been a medical doctor from 1974 through 2007, who would be able to testify as to his conclusions based on the injuries sustained by the parties in the case. And as the court is aware, Illinois Rule of Evidence 702 indicates that if this type of expert evidence will assist the prior effect to understand the evidence or determine a fact and issue, a witness who is qualified as an expert by his knowledge, skill, and experience may testify in the form of an opinion or otherwise. And in the Thompson v. Gordon case, which we cited on page 28 of our brief, the Illinois Supreme Court indicated a person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to lay persons and where his testimony will aid the prior effect in making their decisions. Well, as I indicated, Dr. Earnshaw had been a medical doctor for a number of years. What did the state's motion to bar the testimony of Dr. Earnshaw allege? What did its motion in Limine, what did the state claim as to the reason why Dr. Earnshaw shouldn't be permitted to testify? And more specifically, what testimony did the state seek to bar? Well, not having that right in front of me, Your Honor, I believe what- Let me be, I don't want to be too cryptic here. It seems to me that there are two different aspects to his testimony. One was the cause of death, and the second was the accident reconstruction testimony that he offered. Clearly, he was competent to testify to the cause of death, and the state's motion in Limine looked to me to be seeking to bar his accident reconstruction testimony, and the trial court entered this cryptic order to die with this. But why isn't it your burden to get a clarification? So that if your argument is now, as I understand it to be, you wanted Dr. Earnshaw to be able to testify as to the cause of death or injury suffered by the decedent, to have asked for that clarification at trial. Well, I'm going to pass the buck on that one, even though I know as my physician I'm probably not allowed to. We were not trial counsel, so I'm not sure why trial counsel didn't do that. But we're here, so we're here to bear that burden. Well, I shouldn't. And as a matter of fact, a week ago, this court, in an unrelated case, of course, talked about a trial court's ruling prohibiting defense counsel, prohibiting questioning on the subject of gang or group bias, in which the defendant had asked for the court to inquire about gang bias during a voir dire. As a last phrase, the motion of the defendant said, or to let me ask about it. And the trial court said, I'm not going to, and denied the motion, I'm not going to ask about this. Never clarified and never specified the defense counsel couldn't during voir dire. And we wrote that the defendant had an obligation to clarify whether the trial court's ruling prohibited him, through his counsel, from questioning prospective jurors on the issue. Similarly, where there are two different matters at issue in this case, why didn't defendant's trial counsel have the obligation to clarify, well, Judge, are you barring Dr. Earnshaw from testifying about any medical circumstances, or are you barring Dr. Earnshaw from testifying only about accident reconstruction matters? Well, and in hindsight, I kind of wish counsel had got that clarification, because that would obviously make all of our jobs a lot easier, as far as determining what standard the trial court employed in coming up with this ruling. Why should we conclude, as you are seeming to ask, that the court order barred the testimony from Dr. Earnshaw about all medical matters, when perhaps it did not? And you're asking us to reverse on that basis, aren't you? Yes, Your Honor. Shouldn't the defendant have sought this clarification? Because it's entirely possible, from my reading of this record, that the trial court would have said, no, I was only barring what the state pointed out, that he's not an accident reconstruction witness. He's permitted to testify all you wish about his medical expertise and the cause of death. Well, first of all, I don't know that the cause of death is really at issue. I mean, I don't think there's any question that the cause of death was the accident. You seem to be raising this as the argument. It's important to note that not only was the specific testimony of the doctor's defendant's medical expertise to accident reconstruction excluded, but the expert was prevented entirely from testifying regarding matters that are indisputably within his competency, such as injury analysis. You seem to be arguing to us that you wanted to bring up that subject. I think what the purpose of that testimony would have been was for determining placement of the people inside the vehicle. Based on the injuries that were suffered. If you recall, Your Honor, the state's accident reconstructionist was allowed to testify over our objection as to placement. Yes, I understand. But it seems to me that I'm not, from what happened here, I'm not convinced that he was barred from testifying as to the injuries. Now, the inferences to be drawn therefrom are different. You know, that's a different subject, but I don't see any ruling or any necessity in the ruling by the court to deny Dr. Earnshaw from being able to testify about medical matters. Well, I think the ruling from the court was just he's not going to be allowed to testify. Well, but there are two aspects to the testimony that you wanted to offer. One, accident reconstruction, and two, medical testimony. Yeah, although I think those two were pretty well intertwined. I think the quote-unquote accident reconstruction aspect of his testimony would have been based upon the injuries. The state's motion essentially said Dr. Earnshaw can testify all he wants about the medical stuff, but he's not competent to testify as to what it means regarding who is driving and how the accident occurred. Isn't that what they are arguing? That's what I understand that the state wanted to bar. Okay, and if I'm the trial judge, I can say, yeah, I agree. He's not qualified as an accident reconstruction witness, but Mr. Turpin or trial counsel, if you wanted to present this evidence otherwise, you're free to about the medical injuries. But again, I think that it was error to not allow the testimony as to the accident reconstruction aspect of it because his competence as a medical doctor would have allowed him to make certain inferences from those injuries. I think that not allowing him to testify that, well, yes, this person had these injuries, but then not to be able to base any opinion on that. I mean, there really wasn't any question as to what the injuries were. What was sought was testimony of placement inside the car based on those injuries. Was an offer of proof made by defense counsel at the trial in regards to the accident reconstruction testimony? As far as Dr. Earnshaw's testimony? Yes. I don't recall seeing an offer of proof at trial. And again, Your Honor, I understand that. We know you weren't trial counsel. We understand that. But how can we reverse based on the trial court's keeping out Dr. Earnshaw's testimony when we don't know what that testimony would have been? Well, I think the state, you know, in their motion in limine, took the, you know, kind of stepped forward and said, okay, this is what we understand this guy's testimony to be. And in arguing that, I think that there was not maybe a formal offer of proof in the sense of calling the doctor to the stand, an objection to his testimony being made, taking the jury outside the courtroom, and then putting an offer of proof in the form of questions and answers while he was under oath. Yeah, that was not done. But I don't think there's any question. I don't think anybody has any doubt as to what they expected Dr. Earnshaw's testimony to be. But aren't there requirements in regards to an offer of proof? When there's a challenge being made on appeal as to the trial court's exclusion of evidence, that a sufficient offer of proof be presented so that the record is complete and then the court of review can determine whether or not the evidence that was being proffered was either appropriately barred or the order barring was in error. Obviously, I think the case law supports that that is the preferred method at least. And I think that in the – but with the pleadings, if you look at the state's motion to eliminate it, if you look at the curriculum vitae of the doctor, we have set out in our brief what we expected the doctor to say, what his qualifications were. I would submit to your honors that there is at least an adequate record to make a ruling as to whether the trial court's ruling on the – Who was trial counsel? Who was trial counsel? That was Mr. Allen and another gentleman. I don't recall his name. Well, isn't the question – this court has written several times that the question is whether the record is adequate to dispense with the former or for proof is for the trial judge's call. The trial judge was never asked to make that call, was it? As far as, again, putting the witness on the stand and giving a formal offer of proof. No, no, that would be the formal offer of proof. The informal offer of proof would have been, Judge, is it necessary for us to put Dr. Earnshaw on the stand so you understand that the federal court will understand what evidence he's supposed to be presenting here or are you satisfied based upon the arguments presented in the state's motion that you understand what he would be testifying to if you were to permit him so we don't need a formal offer of proof? Had Judge Day said, I understand, counsel, and it's with that understanding that I'm sustaining the state's objection and granting the motion in limine, then we need nothing further. But it's entirely possible the court would have said, well, no, I just don't think based on what I've heard he's qualified, but I'm not totally convinced or sure yet what it is he's going to say, then he'd have to present the formal offer of proof. Right, exactly. I mean, obviously, that would have been the preferred method, and again, the state's attorney didn't seem to have any questions as to what the testimony was going to be, but again, that doesn't help us out. Yeah, the court granted his motion. He doesn't need any more information. Go ahead. In any event, I think, though, on the basis of this record, I think it's clear as to what his testimony would have been and what it was that we were seeking to allow at the trial level, and I think in light of the fact that the state's case was circumstantial and that their expert was allowed to give an opinion based on the injuries and whatnot, that that's why it should have been allowed for the defense to put on similar medical evidence from their perspective. With respect to argument number two, that kind of segues into that. Mr. Shigemura, obviously an experienced accident reconstructionist, however, the opinions that he gave, as the court notes, were based largely upon his interpretation of the injuries that had been sustained. Now, usually when I see Nate Shigemura's testimony, I'm looking at skid marks, I'm looking at yaw marks, I'm looking at dents here and there. I'm not used to seeing him testify about a conclusion based on the injuries that someone sustained. The accident reconstructionist expert that was presented by the defense came to the opposite conclusion. So that kind of shows how nebulous this kind of testimony can be and how if someone's going to give an opinion as to who was in a car and what position they were in a car, that they need to base that opinion on facts with which they are not only comfortable, but with which they have knowledge and skill. There was absolutely no evidence that Mr. Shigemura had any kind of medical training. He's not testifying regarding any medical training. He's taking the medical conditions of the passengers in the vehicle, including the driver, whoever that would have been, as a given and saying, based upon what the medical people found, here are my conclusions as to where people were in the car. I think that there was no testimony that he had the requisite knowledge and training to make that leap from, okay, here are what the injuries are, to this type of crash, this type of positioning by a person. Well, the trial judge thought he did, and it looks to me like there was an awful lot here. Why should we conclude that it was unreasonable? Isn't that the call for the trial court? It's got to be essentially an unreasonable call to let him testify as an expert? It has to be an abuse of discretion, and again, I have no question. Well, that's what that means, isn't it? Correct. And I have no question that he was testified as an accident reconstructionist, but to base at least part of his opinion or a significant amount of his opinion on his conclusions of a person's injuries when he has no medical training. He didn't conclude as to what their injuries were. He was told what their injuries were. What I'm saying, though, Your Honor, is that he was taking that information, saying, okay, here's what the injuries were, and saying, and therefore, this had to have caused those injuries. Given the nature of these injuries as found by the medical people, what do they mean as far as where people were sitting in the car? Why isn't he qualified to do that? Well, because, again, I think that if he were to be an expert in how certain types of objects when they strike the body will cause certain types of injuries, I think you have to have some type of medical training to do that. And I know that his opinion was based on a number of factors, but a substantial part of that was the injuries sustained by the people involved. Now, I can see from a common sense standpoint, we might say, okay, well, a person sustained an injury on such and such side of their head or such and such side of their body. They were apparently struck there, but how did they get struck there? How did that happen? What type of object caused that particular type of injury? Well, I don't think that they – I mean, they do that, but I don't think based on – How was the rear window knocked out in this accident? That's what they decide. They don't – they say rear window was knocked out. This is how the car was damaged. What did it all mean? Well, again, I think that Mr. Shigemura certainly had training on that type of thing. But, again, what is he relying on and does he really have any expertise on that particular aspect upon which he's giving his opinion? That's our position. And that without that medical expertise, then he wouldn't be qualified to base his opinion in any substantial way on the injuries that were received or sustained by the parties inside the vehicle. What's your best case as to an opinion that he gave at trial that he was unqualified to express? I think that looking at – when he testified, looking at the injuries that they had to have been caused by the body striking a certain object or certainly a part of the inside of the vehicle or something outside of the vehicle, anything that was based on his interpretation of a particular injury, I think that is where his testimony should not have been allowed because he didn't have that medical training, Your Honor. If that answers your question. It does. Okay. Any other questions? I don't see any. Thank you. Thank you. All right. Mr. Zimmerman. May it please the Court? Good afternoon again, Your Honors. My name is John Zimmerman. As Justice Steigman fleshed out this first issue, I will try to go briefly through it. The first issue is regarding the medical expert. The State's position is that the medical expert was not properly qualified. Who was he? He was a medical expert. What was he going to testify about? Accident reconstruction. He was not qualified in his CV or through the report that he had any education in this. Further, there was no real need for in-depth medical analysis in this case. One individual passed away and another. Oh, right. That's an interesting question. Was there any dispute for many of the medical people testifying in this case regarding the nature of the injuries suffered by either of the people in the vehicle? I do not believe there was, Your Honor. Okay. And even counsel stated as he was up there, there really weren't any issues regarding the injuries. So why does there need to be a medical expert to testify to these in-depth injuries? I think the injuries in this case were pretty common sense. If there's an individual who is in the passenger seat and that passenger seat gets struck by a pole at 60, 70 miles per hour and that person has parts of that pole in their head, it's somewhat common sense of what occurred here. And so going back to the medical expert, it was defendant's burden to properly qualify their expert. They could have just stated we want this expert to testify regarding the injuries in this case, and the state said that's okay. But instead, Dr. Earnshaw in his report was talking about protracting angles, certain amount of degrees, assuming highway speeds. Although he is a doctor, the state's position is that he did not have that type of training to do those scientific formulas. With that being said, the trial court did not abuse its discretion in denying that medical expert to testify. Going to the second issue, the state's accident reconstructionist, the state properly qualified him. As the defense counsel noted, he has had years and decades of practice in this. He was an expert in occupant placement, in accident reconstruction, and his testimony assisted the trier fact in determining who was driving the vehicle. Again, going back to the injuries, the defendant contends that Sugar Murr's statements where he stated fatal injuries, related injury patterns, that one was comparatively uninjured, and that a passenger would have sustained severe injuries constituted improper medical opinion. But as Your Honor stated, that was more of him basing the medical condition that the medical doctors examined and analyzed at the hospital about what occurred. I asked Mr. Turpin about the offer of proof, and as is almost always the case, it wasn't handled the way it should have been, where people made the appropriate requests and findings and all the rest between formal and informal. Nonetheless, given Dr. Earnshaw's report, as you quote on page 80 of your brief, about how he protected Ingalls and all the rest of this, it seems to me that the state and probably the trial court in this case was unnoticed. They were both unnoticed as to what was at issue in Dr. Earnshaw's testimony, so that we could hold that this is an argument in other contexts that might have been forfeited if the record doesn't show the absence of an offer of proof what was present. But here, given the nature of the report, it seems to me we probably don't have a situation of surprise or uncertainty. What about that? The state agrees with you, Your Honor. I believe the state did file a motion in response to the defendant's motion in Lemonet, and it was a couple pages long, and it did address various issues. I think it even conceded that he would be able or qualified to testify regarding the medical injuries, but the fact was that he was going to testify to something he was unqualified of. So on the question of should the defendant be held to a forfeit of this argument because of a failure to have a discussion about offer of proof or made a formal offer, it sounds to me like you're not pursuing that claim. The state would pursue that claim, but the state also does agree that there was somewhat of a record that was discussed, but forfeiture is always favored, Your Honor. I believe that's all the state would like to discuss. If there are no further questions, the state would respectfully request this Court to affirm the lower court's judgment. All right. Thank you. Mr. Turpin, rebuttal argument? May I address the panel? Sure. Counsel, if you would identify yourself for the record. You're Attorney Patrick Watts, is that right? Yes. Co-counsel with Mr. Turpin? Correct. All right. You may proceed. The appellee has addressed several issues, and the Court has raised several questions that I would like to address. The notion that somehow causation as to injuries is not medical testimony, to me doesn't fit the bill in this particular case. Doctors are always asked to testify in these types of cases as to causation to particular injuries, and that's exactly what Mr. Shigemura testified to, is causation as to a particular injury. The telephone pole caused this injury. The door caused this injury. She was placed here because this injury was caused by this event. But Mr. Shigemura has absolutely, and this is the second issue, Mr. Shigemura has no medical training. There's nothing in his CV that indicates he has medical expertise, and more importantly, the issue he was called to testify to, he never testified about and had shown no training, which is occupant placement. He specifically said, I have never testified to this issue. The reason Mr. Shigemura was hired, an outside expert, was because the state trooper's expert, an accident reconstructionist, had never testified to accident reconstruction. Well, either had Mr. Shigemura, but he volunteered for pay to do so. So the prejudicial nature of the exclusion, and I understand the issues with the offer of proof, of the medical doctor here has to be considered in light of the medical testimony of this causation of Mr. Shigemura. Mr. Shigemura provided the only medical testimony that was presented to the jury, an extensive medical testimony, opining that because the injuries were caused by these events, accordingly the passenger was placed here. And offer of proof aside, the order from the court specifically denied the witness of the medical doctor the defendant was going to put forward. So had the state not proffered medical evidence, maybe this would be less prejudicial. But when the only thing presented to a jury by the state is causation medical testimony, and that's the sole basis or the main basis of his opinion, and the defense is not allowed to put a doctor on to testify to causation, that concerns me and that shows the prejudicial nature of this. The constitutional challenges here are reviewed de novo, and I understand the issues with abuse of discretion and evidentiary rules, but the de novo review reveals the obvious prejudice of having a criminal defendant exposed to liability based on the testimony of the state's expert that was unrebutted because of the denial of a witness by the trial court. Should an offer of proof be put on for the medical doctor? That's a question that you'll have to decide. But at the end of the day, if you actually read specifically the motions, the motion of limine about the medical doctor, it talks about accident reconstruction, but the only thing in Dr. Earnshaw's report that he was going to testify to was causation as to injuries and how that related. So when we say accident reconstruction, that is causation as to injuries in this case. There's no distinction between the two. That's semantics. Dr. Earnshaw was never going to testify about the speeding car or how fast the car was going or how it struck the pole. That was very, very clear from his report, which was submitted to the court as part of the motion of limine. So it was very clear to this trial court and to the counsel involved in the case that his testimony was going to be about causation as to injuries and what caused the injuries. And so the order reading the state's motion is granted, motion of limine, for denial of witness, I could easily see how a trial counsel would, based on the motions, the details of the motions in the report submitted, would immediately assume that Dr. Earnshaw couldn't testify. So not to excuse trial counsel's conduct, and that's for you guys to figure out, but I could see the error. I could see the confusion on behalf of brethren counsel. If a trial court denied a witness and granted a motion, which specifically requested the accident reconstruction, which in this case is medical causation testimony, it's nothing else, I could see the issue. Thank you, counsel. Counsel, the case will be taken under advisement and a written decision shall issue. Court stands at recess.